Good morning. Good morning, Your Honor. Good morning. May it please the Court, Rich Llewellyn-Jones, appearing on behalf of the appellant, Mr. and Mrs. Meyer. Before I get started on my comments, does the Court have any questions of me, based upon its review of the pleadings? Why don't you go ahead and start your argument, and then we'll jump in. Fair enough, Your Honor. There are two primary issues that warrant reversal of Judge Martinez's order and reinstatement of Judge Overstreet's memorandum decision of 2014. First, Judge Martinez exceeded the standard of review by failing to give due regard to Judge Overstreet's superior opportunity to judge the credibility of the witnesses in his critique of her memorandum decision. Judge Martinez did not specifically identify any finding or conclusion that was clearly erroneous, but rather substituted his subjective opinions to replace Judge Overstreet's findings and conclusions. What factual finding do you think the district court failed to give proper deference to? Well... And then which element does it affect? The injury, the unfair or deceptive element? Well, first of all, Your Honor, this area of law has seen quite a bit of change in the state of Washington, as it has in other states. But in the state of Washington, the court in Frias indicated that a pre-sale violation of the Deed of Trust Act does not give rise to injury and damages per se. Rather, pre-sale violations of the Deed of Trust Act give rise to a consumer protection claim. And it is within that context that the issues have to be framed. As to the Deed of Trust Act, Judge Overstreet found that there was a failure to include the address and telephone number of the U.S. Bank, the purported owner and holder, in violation of RCW 6120-4030. Northwest trustee failed to inquire and investigate WellFargo Authority to execute the beneficiary declaration, which, by the way, Your Honor, is on all fours with the Lyons case. That case and the failure of Northwest trustee services to inquire about the status of the owner and holder's right to foreclose is on all fours with the Lyons case, and also what I refer to in my briefing as Trujillo II. Right, and I don't think that the defendant really disputes that. I think the argument that they raise go more towards the other documents that they have in their possession that they're relying on, right? And it isn't clear, and I'll have them clarify, like which they had in their possession and how that demonstrates the level of proof that's necessary under Lyons and Trujillo. But going back to my original question of the factual findings, so you're saying that the factual findings made by the bankruptcy court that the district court didn't give due deference to is, first of all, the address and telephone number, right? Yes. And there's no statutory requirement for a telephone number, as I understand it, so we're down to the address, providing the address of the servicer instead of the beneficiary? That is correct. And as to the telephone number, by giving a telephone number that is erroneous in the first place is itself misleading and a violation. If you're going to give a telephone number, it ought to be a working one to the intended recipient, which in this case would be the owner and holder under RCW 61-2403-8L. I mentioned to the court the finding that Wells Fargo's authority to execute the beneficiary declaration and its reliance by Northwest Trustees Services was a factor considered by Judge Overstreet, primarily because the beneficiary declaration was found in the Lyons case and in the Trujillo 2 case to be facially ambiguous and could not be relied upon. It's identical in this case and in the Lyons case, identical. And the fact of the matter is, is in the Lyons, the court said we don't have to go any farther. Where there's a reliance upon a facially ambiguous beneficiary declaration, the Deed of Trust Act has been violated and consumer protection damages inure. So we're on all fours with the Lyons and Trujillo 2 case. I'll go on. And I would tend to agree with that, that it does seem to be suffering from the same facial deficiencies as the declarations rejected in Trujillo and Lyons, or at least those cases stand for that proposition. But there were other documents in this particular case that they were relied on. Can you address how those other documents would also be insufficient? Is the argument that they have insufficient indicia of reliability? Yes. Specifically, Your Honor, the information that was received by Northwest Trustees Services did not come from the servicer or the lender. It came from a third party. It came from a company called Vendorscape. The information came across the Internet in a portal that was taken down by Northwest Trustees Services and then relied upon without any inquiry whatsoever. The crucial fact, and I think the one that most troubled Judge Overstreet at trial, was the fact that the testimony was that at the time this referral was made, Northwest Trustees Services had no procedures in place to verify the accuracy of any of the documents that they received. No procedures in place. So every document that they received was facially taken in without consideration to its veracity. Why is that an issue? Well, the fact of the matter is two of the documents, the loss mitigation form and the beneficiary declaration, which is at issue, were prepared by a gentleman by the name of John Connerty, whose testimony was that he had no personal knowledge of any of the things he signed under penalty of perjury, had no idea where they came from, and merely signed them willy-nilly. That was undisputed. And, frankly, was never considered by Judge Martinez. They failed to investigate specifically and verified Mr. Connerty's personal knowledge of the facts represented in the loss mitigation form, and that's a violation of RCW 6124031. Moreover, Northwest Trustees Services wrongly identified itself as an agent for U.S. Bank at a point in time when they were acting as a successor trustee. Why is that an issue? Well, once you're a successor trustee, you have an obligation, a duty of good faith, in Clem they refer to it as a fiduciary duty of good faith, to be even-handed to both parties. You're no longer an agent of anybody. You have an obligation to both the buyer and the beneficiary, the borrower and the beneficiary. Northwest Trustees Services failed to investigate and verify whether the loan was even in default. There was no testimony whatsoever that there was any knowledge of a default in the obligation at the time the notice of default was issued and the notice of trustees sale was issued. Now, the comment that is made in the pleadings is that that really doesn't matter because at trial it was determined that there was a default. But it's prospective. The question is, under Washington law, what was known to the successor trustee before the notice of trustees sale is issued? So we have to look at this galaxy of facts that overwhelmingly determined in Judge Overstreet's mind that Northwest Trustees Services had failed to comply with its duty of good faith. Now, in response to overwhelming evidence that there was a failure of Northwest Trustees Services to comply with its duty of good faith, relying upon documents that it never verified and procedurally had no basis or way to verify, there was a number of arguments that arose. Specifically, Judge Martinez said, well, look, these are mere technicalities. And these are technicalities that at trial we cleared up, but he doesn't address the issue of what was known at the time that the notice of trustees sale and notice of default were issued. But unfortunately, under Washington law, the deed of trust act must be strictly construed in the borrower's favor. And that's the Albus case. Substantial compliance with the statutory provisions of the deed of trust act is not sufficient, and mere technicalities are not tolerated under Washington law. Judge Martinez also made the comment. Well, strict construction gives you the facial invalidity that establishes perhaps the element of unfair or deceptive element. I think a lot of what Judge Martinez was talking about goes towards injury and causation. So do you want to talk about that, how the retention of the attorney was really triggered by the violations, versus the attorney was going to get involved anyway and the document that got sent out, the QWR, addressed a lot of other violations? That is true, because as you get into this labyrinth of lending at this level, documents are created by a number of entities that have no personal knowledge of what was going on, and they're relied upon by agencies like Northwest Trustees Services, as in the Lyons case, to their detriment. It is the reason I bring up the Albus case, is that to strictly construe, not strict construction, but strictly construe the statute in favor of the borrower, is the focus. As to the damages, there, first of all, was no testimony at trial to indicate at the time the notice of default, notice of trustees sale was issued, there was any evidence of a default. No evidence of a default. Two, that evidence came up during the trial, but at the trial there was no evidence that at the time the notice of trustees sale and the notice of default were issued, there was, in fact, a default in the obligation from the owner or the holder of the obligation. The damages here are that, and I'll go to the issue that was raised by the amicus and also by Judge Martinez, it's what I call the no harm, no foul rule. Establishing proof of ownership at the time of trial, four years after issuance of the notice of trustees sale, is insufficient. Absolutely insufficient. As the Lyons Court noted, if there's an indication that the beneficiary declaration might be ineffective, trustees should verify its veracity before initiating the trustees sale. But I think that the gravamen of the argument is that, well, look, even if they were wrong, but ultimately it was determined that there was a default, not to worry. Because I think that the argument was that nothing the trustee did, and I believe this was the amicus brief that I got this, that nothing the trustee did kept Mr. and Mrs. Meyer from performing or curing the default. Well, at the time that they were supposed to cure, there was no default alleged by the beneficiary. The problem is that under the Deed of Trust Act and our Washington law, even if there was a default, that does not excuse violation of the Deed of Trust Act. I'm citing there Freas and Anang case. In that case, just because there may be a default doesn't mean that the trustee, successor trustee, gets a free ride. If they violated the statute, damage is inert. We're familiar with that. You're down to a little over a minute. Do you want to save that for Butto? I'll take the Court's invitation. Good morning, Your Honors. May it please the Court. My name is Joshua Sher for the appellee. Mr. Sher, I understand that you're sharing the argument time with Mr. Lincoln, is that right? Mr. Lincoln, yes. And are you addressing certain issues? He's addressing certain issues, or is it a mixed bag here? I was just going to inform the Court, I have one thing to say about judicial estoppel, and I'll address the CPA elements, except Mr. Lincoln will handle causation and injury that the Court was asking about. Which defendant do you represent? There's only one appellee, Your Honor, that's the trustee company, Northwest Trustee. Yes, the lender was dismissed. And you're addressing judicial estoppel? I have one thing to point out beyond the brief on that, and then I was going to address the unfair and deceptive element, public interest. So, Your Honor, in terms of judicial estoppel, I think the briefing's pretty straightforward on that, but essentially what the Myers are arguing is, well, we didn't learn about these claims until we hired counsel much later on. And that actually underscores the fact that they were not confused when they received the foreclosure notices. I mean, either they were confused when they received the notices, in which case they failed to schedule or amend their claims in the bankruptcy before their plan was confirmed, or they weren't confused and there was nothing unfair or deceptive about those notices and no CPA liability. They're essentially trying to argue both ways, and it's got to be one or the other. Why does it have to be one or the other? Well, they were either confused or they weren't. Well, these are strict procedural protections so that the homeowner understands who they're dealing with. And so if you don't tell them the appropriate address, if you put on their names of companies that they've never dealt with, that creates confusion right there. That's different than being aware of what claims you can bring successfully through litigation, right? So if you get a notice that says Bank A basically is going to initiate foreclosure sale and your home is going to be sold in three months, and you're thinking, I've never dealt with these people before, is it a fraudulent claim? Is somebody trying to scam me, as Judge Overstreet points out? That's the importance of having the procedural protection. That's different than when you're talking about whether we should apply an equitable doctrine of judicial estoppel. Well, the standard under Hamilton, Your Honor, is that if you have knowledge of the facts giving rise to this potential claim, and they're saying, we had knowledge of the facts, we got this notice of default and it had these entities and we had no idea who they were, you have a duty under the bankruptcy code to schedule those claims and a continuing duty to amend. And they didn't do that in this case. And in fact, they confirmed their plan after stipulating that the trust, the Gel II Loan Trust, should receive relief from stay to foreclose on their property. These claims were fully litigated by both sides, right? At trial. And were there any objections raised that say, wait a minute, there's no formal amendment, and so therefore we don't have to come and defend these claims? We did. We did raise that with Judge Overstreet, Your Honor. I know the Myers tried to argue that somehow we never raised that. It's in the record. We raised it in argument on multiple occasions. But let's talk about the procedural issues then. So the first primary argument that the Myers raised here is, well, Northwest trustee didn't verify anything. And after this case went to trial, that's when the Lyons case came out from the state Supreme Court. And this court should look to the state's highest court in terms of interpreting Washington law on foreclosure issues. The Lyons case, there's a couple of distinguishable factors here. First of all, in Lyons, you had a borrower who contacted the trustee company and said, there's a problem. There's notice inquiry given to the trustee company that they might not have the right beneficiary. Second of all, in Lyons, the court didn't say that there was some kind of per se liability because you had an ambiguous declaration. In fact, subsequent to Lyons, the Washington Court of Appeals in the Bucci case, which I believe we submitted as a supplemental authority, Bucci is very helpful because it's the only Washington decision that addresses what other documents apart from the declaration a trustee can use to satisfy the standard. And I'm inclined to agree with your reading of Lyons. There's a facial ambiguity here. And so really the question is the other documents. But I think the other documents are potentially problematic as well. First of all, let me clarify. Do you agree that in looking at the other documents that NWTS could have relied on, that these are documents that basically had to be in their possession before the recording, before the recording, and then transmitting or service of the trustee's sale notice? In order to comply with the statute, which is 6124030 subsection 7, the trustee has to have what's called sufficient proof that the beneficiary was in fact the beneficiary. So the other documents that would have filled in the gap in terms of sufficient proof are documents from this database. Not necessarily, Your Honor. I can give the Court the list. So first of all... You have the documents from the database, and then you have the appointment of the successor trustee. That's another one. You have a title report confirming the beneficiary. We have Northwest trustee being aware that stay relief was granted to the beneficiary. And the bottom line, and this Court said it in a case called Myers v. Merz, the bottom line is who held the note. And I point the Court to its decision in Mickelson v. Chase, which is 579 Federal Appendix 598, 2014 case from this Court. It cannot be unfair or deceptive to take actions that are true. It was true that Gel 2 was in fact the beneficiary. It was true. No amount of investigation would have changed the fact that it was true. Northwest trustee could have flown somebody to the vault to go see the note, and Gel 2 would have still been the beneficiary. They could have called 100 people at Wells Fargo, and Gel 2 would have still been the beneficiary. It cannot be unfair or deceptive when it's true. It was always true. So you can give somebody the runaround all day long, weeks on end, but so long as the underlying information that you have internally is true, there could never be satisfaction of the unfair or deceptive element? Well, again, this Court in Mickelson said that it can't be unfair or deceptive if it's true, but we don't believe there was any runaround. The notices complied with State law. The notice of default, I think as Your Honor pointed out, no phone number was required under 030 subsection 8. You don't have to give a phone number for the owner of the loan. Ownership, in fact, is totally irrelevant under recent case law in Washington. Ownership simply doesn't matter to enforceability. But in terms of the address that was presented, the district court had that spot on. The district court said that it's reasonable to include the address information, care of the servicer. I mean, first of all, the trust had no employees. That was firmly established at trial. So writing to the trust or calling the trust wouldn't have done anything. It's a legal trust. This Court in the case of Bavand, 587 Federal Appendix 392, which Mr. Jones and I argued before this Court, this Court found this exact same challenge to the address and phone number issue was not a material prejudicial error. And this has already been addressed by this Court in the Bavand decision. It was the exact same issue that counsel raised and was rejected by this Court. So we look at, you know, did the trustee have enough information? And these... How do you square your argument with the Washington Supreme Court case of Bain? Well, Bain says that you have to be the holder of the note to be the beneficiary. Gel Tube was the holder of the note. In fact, in this case, it was actually both the holder and the owner. So these arguments about, well, they weren't the owner, they were the holder, same entity. But it did reject the idea that information about the loan servicer was all that the homeowner needed to know. The recent case, the case from the State Supreme Court, I'm blanking out the name, that was argued the same day as Trujillo, the one with the foreclosure Fairness Act case that says ownership's irrelevant. That case talked about how, actually, if a person knows who the servicer is, the State Supreme Court said that generally that is sufficient information for someone to know, because it's generally recognized that, in fact, the servicer is who you contact. That's exactly what the State Supreme Court has said. So Bain talks about the fact that you have to hold the note to be the beneficiary. Absolutely. Gel Tube held the note. They were the beneficiary. But the standard under Lyons for a trustee company is a cursory investigation. It doesn't mean you have to go out and do some extended verification. And there's no case, either in Washington or from this Court, that says there's some ancillary inquiry duty, unless you have, like, a Miss Lyons who puts you on inquiry notice. And the Myers never did that. And then, Your Honor, we also have the public interest prong I just want to mention before I cede time to Mr. Lincoln. The Myers tried to contact the servicer? They sent this purported QWR letter, which the bankruptcy court blamed the trustee as part of the damages in this case. That had nothing to do with the trustee. But before that, weren't they referred to some Wells Fargo employee, and then they tried to figure out, like, where U.S. Bank came into the picture? Right. Because Wells... All that happened before they went out and retained counsel? ASC, Wells Fargo, same company. They were servicing the loan. They're who the Myers needed to contact for any issues regarding payments. The Myers did that. They reached out to ASC, and then they were referred to Wells Fargo? Well, they're the same company. Wells Fargo and ASC, and this court has recognized it before, many courts have recognized it, they're literally the same company operating under a trade name. Did they try to figure out what the relationship was between Wells Fargo and U.S. Bank? They said that they didn't understand the relationship, but that's not... There's no case or statutory duty for the trustee to try to assist a borrower in understanding who the investor on a loan is or who the loan trust is. The trustee is required to issue the statutory notices, and it did that. And these aren't credibility of witness issues. These are legal issues that the district court was able to make findings on. And lastly, Your Honor, public interest, there was literally no evidence of that, and that is a co-equal prong under the Consumer Protection Act. They put on nothing in three days of trial talking about anything other than this particular loan. And the CPA claim just simply fails automatically without public interest. I'm going to cede the rest of our time to Mr. Lincoln. I want you to go back and address one thing before you sit down. I don't think you addressed it. Judge Martinez's reasons for rejecting judicial estoppel were a little bit different than the reasons you gave, aren't they? Yeah, I think that... What's your rebuttal to Judge Martinez? I think, Your Honor, that Judge Martinez wanted to reach the merits of the issues. And so he rejected our judicial estoppel argument because otherwise that would vitiate the entire case. And so I disagree, and I think estoppel applies. I think reaching the merits, the court could also affirm Judge Martinez's ruling. Thank you, Your Honors. Good morning. May it please the Court, my name is Steve Lincoln, L-I-N-K-O-N, and I represent Northwest Trustee Services. I wanted to address the causation and damages portion of the case. I did want to respond to the Court's statement about the runaround. There was no runaround because the Myers never raised any issue with the trustee about any confusion that they had. So unlike the Lyons case where Ms. Lyons contacted the trustee and raised an issue, that never happened here. So the trustee was never, never clued in that there was an issue. And there wasn't an issue because the information was accurate. Well, the Washington courts tell us that these procedural requirements are to be strictly construed. So assuming we get past the element of unfair or deceptive runaround, I think that's a good thing. In terms of damages, if a homeowner thinks that they've received a defective notice of default that tells them that the home is going to be sold within months, how else do they slow down the process other than doing what the Myers did in this case, seeking the assistance of an attorney, sending a letter for additional information, going into bankruptcy so that you can slow down the process before your home is sold? None of which involves the trustee. They didn't send any letter to the trustee. The trustee doesn't know that they issued the QWR, the Qualified Written Request. And so from the trustee's standpoint, unless you tell the trustee there's a problem, there's nothing for the trustee to do to slow down the process, as you say. Of course, they have their remedies with the court. They can deal with the servicer. They have remedies. The question here is, is the trustee liable under these facts? We found four categories of injuries. First, the court assessed $980 in legal fees for having to write the QWR, the Qualified Written Request. The trustee is not involved in that. They never even received the QWR. Qualified Written Request is a right that borrowers have under federal law, under RESPA, to get information about their loan. The Myers did that, sent it to the servicer. The trustee has no idea what happened with that. Why should the trustee pay for that? The second element was the court awarded $3,500 in attorney's fees and $274 in costs for the Myers bankruptcy filing. How is the trustee responsible for the Myers bankruptcy filing? That was their decision to file bankruptcy. And this mortgage loan was not even included in their final plan. They had over 68 creditors. They owed over $105,000. They confirmed the plan that allowed them to pay 15% of their debt and took the mortgage loan out of the plan. So they paid nothing on their mortgage loan. So they got a great benefit from the bankruptcy filing. Why does the foreclosure trustee have to pay for that? There is no nexus between anything the trustee did in this case and the Myers filing bankruptcy and the cost of that bankruptcy. The third element of the damages is rent. The bankruptcy court assessed $10,000 in rent that the Myers occurred in 2013 when they moved out of their house. Let's go through the timeline a second. The foreclosure was started in 2010. The Myers filed bankruptcy in 2010. In 2011, they confirmed their plan. Before they amended it, they took out the mortgage loan. They confirmed their plan in 2011. This was after they stipulated with the lender that allowed the lender to foreclose. And then in 2013, they incurred this rent, and Northwest is expected to pay $10,000 in rent. There's absolutely no nexus between anything that Northwest did and the rent that they incurred in 2013. They gave up their house. They were going to have to move. Presumably they would have to pay rent. So that isn't a but-for causation of the damage. And in addition to the rent, the bankruptcy court assessed Northwest $2,300 in security deposits that the Myers had to pay in 2013. That's not a damage. If they perform their rent, they're going to get those deposits back. So that shouldn't have been assessed against the trustee. And finally, the bankruptcy court charged Northwest $3,200 for the Myers' time off from work to attend multiple mediations and hearings. Northwest wasn't involved in any mediation. You don't mediate with the foreclosure trustee. They mediate with the loan servicer. The Myers chose to do mediation. Why should Northwest have to pay for that? But more importantly is CPA damages are limited to property or business. Lost wages are not compensable under the CPA. This isn't even an eligible damage under the CPA. But there isn't any nexus between anything that Northwest did in this case and the Myers mediating with their lender or the Myers attending their bankruptcy hearings. This court should affirm the district court decision below and rule that there was no CPA violation in this case. Thank you. Thank you for offering the opportunity to rebut. As to the judicial estoppel argument that Mr. Scheer raised, neither Judge Overstreet nor did Judge Martinez find it particularly compelling, and I would ask the court to so find as well. The fact of the matter is that it's very difficult for homeowners in an environment when the law itself is changing so radically as it has in the state of Washington, since 2012, to articulate claims based upon that law. They may have facts, and as Your Honor had pointed out, they did act on these by seeking counsel, by seeking a bankruptcy, and trying to sort things out and find out who they are dealing with. As to the deception, I would point out to the court that the Lyons and Trujillo cases speak volumes to the sort of deception that homeowners were faced by the CPA. And I would point out that in the notice of default, Northwest Trustee Services didn't say they were just a successor trustee. In the document itself, they referred to themselves as the agent, the agent for the company. That's going to be a problem. It is a problem because they were no longer acting as an independent trustee. They were no longer the servicer, lender, trustee, or whatever. I wanted to deal with the other issue that was raised by Mr. Lincoln. Judge Overstreet identified that Northwest Trustee Services violated the Deed of Trust Act by failing to provide certainly the name of the owner of the obligation. We've addressed that already. Judge Overstreet also identified the lack of any evidence of a default as an act or practice that meets the first prong of our CPA Act. And finally, Judge Overstreet identified Northwest Trustees' failure to verify any of the information that they received through this third-party portal, Vendorscape. And in fact, they went so far as to instruct their employees not to call, not to call the service service provider. And in fact, they went so far as to instruct their employees not to call the service provider or the owner of the obligation to verify any of the information. We're familiar with her ruling, and you're over time, so unless my colleagues have any additional questions. Thank you very much, counsel, for your argument.
judges: Tashima, Nguyen, Walter